### A99A0520. LEON v. THE STATE.
(513 SE2d 227)

ELDRIDGE, Judge.

Defendant Everado Leon challenges his May 1997 convictions for child molestation, enticing a child for indecent purposes, and simple battery. We affirm.

The facts of this case, viewed in favor of the verdict,[1] are as follows: On February 24, 1997, Leon's stepdaughter, who was eleven years old at the time, told two friends at school that Leon had fondled and molested her on the previous Saturday, February 22, 1997, while her mother was at work. She reported the same information to her school counselor, who encouraged her to tell her mother about the abuse. After the victim reported the abuse to her mother, the mother called the police from a neighbor's house. A police officer arrived and questioned the victim. The officer was unable to communicate with Leon, who speaks Spanish, so he turned the case over to a detective and a formal investigation ensued.

The victim consistently described the same events to her friends, school counselor, mother, and neighbor, as well as to the police officers, other investigators, and prosecutors. She reported that,

---

[1] *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990).

while she was at home alone with Leon on February 22, 1997, he told her to go into the bedroom that he shared with his wife, the victim's mother. When the victim refused, he slapped her across the face and pulled her hair. She went into the bedroom and wrapped a blanket around her body. Leon lay down next to her and began to fondle her genitals; he told her that he had to check to make sure she had not been with any men. When she cried out and resisted, Leon slapped her again. He then dragged her by her arms and hair into the bathroom. Leon turned on the radio to a high volume. He pushed her against the wall and fondled her. He then lifted the victim up, put her on the edge of the sink, pulled down her underwear, spread her legs, and attempted to insert his penis into her vagina. She continued to resist, and he was unable to consummate the act. Leon then forced her to assist him in masturbating; he slapped her every time she took her hand away from his penis. After the act was complete, he apologized to her and told her not to tell anyone, as he had done nothing wrong.

After the victim reported the abuse and the investigators interviewed her, Leon and the victim's mother were instructed to come to the Sheriff's office. The investigators questioned Leon, a foreign national who speaks little English, with the assistance of a Spanish-speaking deputy sheriff. He was given his *Miranda*[2] rights in Spanish, and proceeded to give a statement to the investigators. In the statement, Leon admitted touching the victim's genitalia and slapping her, but said that the victim had taken off her panties, had rubbed against him, and had touched his penis. Leon also admitted that he apologized to the victim later and "swore to her that I would never touch her again because I know it was wrong." Following this statement, Leon was arrested and indicted. The trial court appointed counsel to represent Leon at trial.

A jury trial was conducted on May 1, 1997. The victim's testimony against Leon was consistent with her pre-trial statements. Leon testified on his own behalf, during which testimony he denied all of the allegations and asserted that the victim, his wife, and police investigators had lied. The jury convicted Leon on all counts. On May 7, 1997, trial counsel filed a motion for new trial on general grounds. Leon secured the services of new counsel on June 11, 1997. This counsel filed amendments to the motion for new trial on August 22, 1997, and again on October 14, 1997. The trial court conducted an evidentiary hearing on the motion and amendments on October 17, 1997, but did not rule immediately on the motion.

Between October 1997 and January 1998, Leon's brother paid for

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

the victim to fly to California, where Leon's family lived. On January 5, 1998, while the victim was staying with Leon's relatives, she signed an affidavit in which she recanted the entirety of her trial testimony. On February 9, 1998, Leon's counsel filed a third amendment to the motion for new trial or, in the alternative, an extraordinary motion for new trial based on the alleged discovery of new evidence. Defense counsel asserted that Leon was entitled to a new trial because the victim recanted her trial testimony and because the State allegedly knew or should have known that the victim was lying when she testified. The State moved to dismiss the third amendment to the motion for new trial to the extent that it was based upon the victim's recantation or any alleged prosecutorial misconduct. The trial court conducted another evidentiary hearing on the motion on July 30, 1998, and allowed defense counsel to question the victim regarding her pre-trial statements and trial testimony, as well as the circumstances surrounding her recantation. Following such testimony, the trial court granted the State's motion to dismiss, ruling that defense counsel had failed to present any evidence of prosecutorial misconduct. On August 26, 1998, the trial court issued a comprehensive, 17-page, written order denying Leon's motion for new trial based upon the grounds presented in the original motion and the amendments. Leon appeals. *Held*:

1. In his first enumeration, Leon asserts that his constitutional rights to a fair and impartial jury and individual voir dire of each juror were violated by the jury selection procedure utilized in the Superior Court of Whitfield County. See OCGA § 15-12-133. In his brief, defense counsel speculates that, because of alleged unspecified deficiencies in trial counsel's voir dire of the jury pool,

> there perhaps were jurors whose own child or a friend's had been molested, those who found child molestation so distasteful that they could not be objective, or those who might be upset with the huge influx of Hispanic persons into Whitfield County . . . that a guilty verdict was one way to have one less Hispanic in the county.

However, defense counsel admits that there is no evidence in the record to support such speculation. Further, the record clearly shows that the trial court did not deny trial counsel the opportunity to voir dire the entire jury panel.

In the Superior Court of Whitfield County, juries are selected for several trials on the same day, even though some of the trials may not start until later in the week. Leon's case was fourth on the trial calendar for the week of April 28, 1997, and the trial commenced on Thursday, May 1, 1997. The procedure utilized by the trial court is as

follows: panels of 12 jurors each are brought into the courtroom and juries are selected for the first case on the trial calendar of that week. Jurors who are not chosen for the first case are included in subsequent panels. Therefore, in Leon's case, 11 of the 12 jurors on the panel challenged in this appeal had been questioned earlier in the day by the State and Leon's trial counsel in other cases.

During voir dire, after the trial court and State had questioned the jury panelists, trial counsel told one jury panel that "everybody that's on this panel except for one, Mr. Peeples, has been on my panels earlier. So, I'm not going to go over the same questions I went over with you earlier." During the motion for new trial, trial counsel expounded on why he did not ask individual panel members the same questions that he had asked them earlier in the day while selecting a jury for another case.

> [N]ormally I have a litany of questions . . . that I ask to [the jurors], and I get the same [jurors] on the same panels again. I don't need to ask those continuing questions again. . . . I'm not going to waste [the jury's] time or my time or the judge's time on that. My client doesn't want to sit there and listen to the same questions either.

Accordingly, the record is clear that trial counsel — not the trial court — limited his voir dire of the jurors as a matter of trial strategy. See Reid v. State, 129 Ga. App. 657, 658 (1) (a) (200 SE2d 454) (1973) (the right to individual voir dire of jurors may be waived by failure to exercise it). There is no merit to this enumeration.

2. In his second enumeration, Leon claims that the trial court erred in overruling his objection to the State's questioning of the witness and her mother regarding Leon's physical abuse of the mother, as well as in allowing the State to label Leon as a "wife-beater" in closing arguments. Leon asserts that questions regarding whether he abused his wife elicited irrelevant character evidence and were prejudicial to the issues underlying his case.

(a) However, trial counsel initiated this line of testimony when he asked the victim, "Did you talk with your mother about Mr. Leon leaving the house?" When the victim replied that she had had such discussions with her mother, trial counsel asked if it was "just because you didn't like the way he punished, *or for any other reason?*" (Emphasis supplied.) On cross-examination, the State followed up on this inquiry by asking the victim, "What were those reasons you discussed with your mom about leaving Mr. Leon?" The victim answered "He hit me a lot and he hit. . . ." When trial counsel objected, the trial court held that trial counsel had "brought up conduct within the household dynamics among the parties. . . . You have undertaken to

establish that she had other motives" for trying to get Leon to leave the house. Pursuant to further questioning by the State, the victim stated that Leon hit her and her mother and that this caused the victim to be afraid of him.

During his direct examination, Leon admitted that he disciplined the victim by hitting her with a belt because she had friends that did not meet his approval. During the State's cross-examination of Leon, the State asked, "Mr. Leon, do you beat your wife?" Leon responded, "Yeah I have hit her two or three times . . . just a little slap because she would go to the bar." During his testimony, Leon repeatedly attempted to interject his theory of the case, i.e., his wife convinced the victim to make these allegations so that he would go to jail and she could be with other men. However, Leon later denied that he abused his wife. Trial counsel did not object to these inquiries or the resultant admissions.

During the hearing on Leon's motion for new trial, trial counsel testified that he asked the victim about her reasons for wanting Leon to move out because the "main thrust of my defense was that the child had made [the molestation incident] up in order to get Mr. Leon out of the house." Defense counsel did not question trial counsel during the hearing about why he did not object to the State's cross-examination of Leon or why he did not move for a mistrial.

In rejecting this basis for a new trial, the trial court properly found that trial counsel had opened up the issue of the victim's motivations regarding the molestation allegations and that Leon repeatedly interjected such motivations during his testimony. See *Jordan v. State*, 267 Ga. 442, 447 (4) (480 SE2d 18) (1997); *Smith v. State*, 258 Ga. 181, 182 (1) (366 SE2d 763) (1988). Further, after reviewing the entire record of this case, this Court finds that, even if the admission of Leon's recent spousal abuse was error, it was harmless. See OCGA § 24-9-20 (b); *White v. State*, 268 Ga. 28, 32 (4) (486 SE2d 338) (1997).

(b) As to Leon's argument that such evidence was irrelevant and "wholly immaterial" because Leon was charged with child molestation, we note that Leon also was charged with battery for repeatedly slapping the victim when she would not cooperate. Evidence of Leon's past abuse of the victim — and her mother, if otherwise admissible — is clearly relevant to the issues before the jury. See OCGA §§ 24-2-1; 24-2-2.

(c) As to the State's reference to Leon as a "wife-beater" during closing argument, this Court finds that the use of such label does not constitute reversible error. Prosecutors are given wide latitude during argument in the use of illustrations and figurative speech when such rhetoric is based on reasonable inferences from the evidence presented at trial. *Davis v. State*, 178 Ga. App. 357, 359-360 (343 SE2d 140) (1986); see also OCGA § 17-8-75; *Ortiz v. State*, 222 Ga.

App. 432 (474 SE2d 300) (1996); *Green v. State,* 209 Ga. App. 274, 275 (4) (433 SE2d 383) (1993). "Careful scrutiny of the transcript of the case *sub judice,* together with examination of relevant case law, indicates that the prosecutor's remarks, while arguably offensive, do not rise to the level of reversible error." (Emphasis in original.) *Davis v. State,* supra at 360. The remarks alluded to facts in evidence, i.e., the victim's assertions of spousal abuse and Leon's admission to such abuse.

3. Leon asserts that, during the second hearing on his motion for new trial, the trial court improperly denied defense counsel the opportunity to "fully develop whether the prosecutor knew or should have known prior to her testimony that the victim was lying in her trial testimony." In support of his assertion of such prosecutorial misconduct, defense counsel presented the victim's affidavit demonstrating her post-trial recantation. Additionally, defense counsel attempted to show the State's alleged prior knowledge by questioning the victim during the second hearing.

(a) The victim unequivocally testified during the hearing that she never indicated to the police, prosecutors, or anyone else prior to trial that she was lying. In fact, the victim admitted that she had always reported the facts of the abuse prior to trial in a manner that was consistent with her trial testimony. Following the victim's hearing testimony, the trial court questioned defense counsel regarding whether he had any other evidence of prosecutorial misconduct. Counsel responded that the victim's mother was prepared to testify that she told police officers investigating the incident that she did not know who to believe — Leon or her daughter — and did not want Leon to be prosecuted. The trial court then correctly found that, "[b]ased upon the victim's unhesitating and unqualified [hearing] testimony that she never told anyone that her report of child molestation to various people and her testimony at trial was false," there was no evidence to support Leon's speculation that the prosecution knew or should have known that the victim was "lying." Accordingly, he properly refused to allow defense counsel to continue questioning witnesses based upon the *possibility* that such examination "may well lead to evidence" of prosecutorial misconduct. See *Cato v. State,* 195 Ga. App. 619 (1) (394 SE2d 413) (1990). There was no error.

(b) Further, we must reiterate that "[t]he law is settled that a post-trial declaration by a State's witness that [her] former testimony was false is not a ground for a new trial." (Citations and punctuation omitted.) *Karvonen v. State,* 205 Ga. App. 852 (1) (424 SE2d 47) (1992). See also *Drake v. State,* 248 Ga. 891, 894 (287 SE2d 180) (1982); *Cato v. State,* supra. In addition, to the extent that Leon's motion could be framed as an extraordinary motion for new trial based upon newly discovered evidence, it is clear that the recantation

of the victim would serve only to impeach her previous testimony. Accordingly, such recantation does not qualify as a basis for the grant of an extraordinary motion for new trial. See *Dick v. State*, 248 Ga. 898, 900-901 (287 SE2d 11) (1982) (enumerating the six requirements to support an extraordinary motion for new trial).

4. In his fourth enumeration, Leon asserts that the trial court erred in denying his claim of ineffective assistance of counsel. In its order denying the claim, the trial court expressly found that trial counsel did not render ineffective assistance. Leon presents several alleged bases for this enumeration on appeal.

> There are two components to a claim for ineffective assistance of counsel. First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that the defense was prejudiced by the deficient performance[, i.e., there was a reasonable probability that the outcome of the trial would have been different but for counsel's deficient performance]. Both components must be shown before we can find that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. . . . Trial strategy and tactics do not equate with ineffective assistance of counsel. Effectiveness is not judged by hindsight or by the result. Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that defendant and his present counsel disagree with the decisions made by trial counsel does not require a finding that defendant's original representation was inadequate.

(Citations and punctuation omitted.) *Karvonen v. State*, supra at 852-853 (2). See also *Strickland v. Washington*, 466 U. S. 668, 695-696 (104 SC 2052, 80 LE2d 674) (1984).

Further,

> "[a] trial court's finding that a defendant has not been denied effective assistance of counsel will be affirmed unless clearly erroneous and the defendant must overcome the strong presumption that trial counsel's conduct falls within the wide range of reasonable professional conduct." *Kelly v. State*, 267 Ga. 252, 253 (2) (477 SE2d 110) [(1996)]. The trial court's findings in this case also were supported by the presumption that in the absence of contrary evidence, counsel's actions are presumed strategic in nature. *Adams v. State*, 217 Ga. App. 532, 533 (2) (458 SE2d 171) [(1995)], citing *Earnest v. State*, 262 Ga. 494, 496-497 (422 SE2d 188)

[(1992)]; *Stanley v. Zant*, 697 F2d 955 (11th Cir. 1983), cert. denied, 467 U. S. 1219 (104 SC 2667, 81 LE2d 372) (1984).

*Milliken v. State*, 230 Ga. App. 810, 813 (498 SE2d 127) (1998). See also *Strickland v. Washington*, supra; *Brogdon v. State*, 255 Ga. 64, 68 (335 SE2d 383) (1985). The trial court's findings here were not clearly erroneous.

(a) Pursuant to our decision in Division 1, supra, there was no basis for an objection as to the trial court's alleged refusal to allow counsel to individually voir dire jurors. Therefore, trial counsel's failure to object thereto did not constitute ineffective assistance.

Further, the trial court specifically found that trial counsel "conducted a reasonable amount of voir dire, and advisedly refrained from asking the same questions over to the same jurors, a strategy, which if he had done, would have been more likely to antagonize jurors than to elicit further helpful information." There was no error.

(b) The record does not support defense counsel's allegation that trial counsel made only a "feeble attempt" to suppress Leon's written confession during a *Jackson-Denno*[3] hearing. On the contrary, the record demonstrates that the trial counsel raised the voluntariness issue and that he extensively cross-examined the investigating officers as to the circumstances surrounding Leon's written statement.

(c) Pursuant to our decision in Division 2, supra, trial counsel's failure to move for a mistrial upon the admission of evidence and arguments about Leon's physical abuse of his wife does not constitute ineffective assistance. As the trial court admitted such statements over the objection of trial counsel, his subsequent failure to move for a mistrial presumably was a matter of trial strategy. Further, defense counsel is unable to show that the outcome of the trial would have been different but for trial counsel's failure to move for a mistrial, i.e., that the trial court would have granted the motion.

(d) Trial counsel's selection as a member of the grand jury which eventually indicted Leon without the assistance or participation of trial counsel does not support a finding of ineffective assistance.

To establish ineffective assistance of counsel due to a conflict of interest on the part of trial counsel, a defendant who raised no objection at trial must prove that counsel "actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." . . . Where the contention is only the possibility of conflict, this is insufficient to impugn a criminal conviction.

---

[3] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

(Citations and punctuation omitted.) *Sartin v. State*, 223 Ga. App. 759-760 (479 SE2d 354) (1996).

As trial counsel explained during the hearing on the motion for new trial, when he was called for grand jury duty, he approached the county's District Attorney and asked to be excused because of the potential for a conflict of interest in cases for which he might be assigned as defense counsel. It is clear from the record that counsel did not serve on the grand jury except in a single session which did not involve Leon and which did not occur until after Leon was indicted. Further, it is clear that counsel did not, in any way, participate in the consideration of the charges against Leon.

Accordingly, defense counsel has failed to demonstrate that trial counsel's extremely limited and totally unrelated service on a grand jury presented an actual conflict of interest. However, even if these circumstances presented an actual conflict of interest, defense counsel has not shown how Leon was prejudiced thereby. See *O'Melia v. State*, 255 Ga. 476, 479 (4) (339 SE2d 586) (1986) (finding that defense counsel's concurrent service as a county solicitor, while presenting an actual conflict, did not entitle the defendant to a new trial, as no prejudice was demonstrated).

(e) Leon's remaining assertions of ineffective assistance either concerned issues of trial strategy or presented factual issues that were decided adversely to Leon in the trial court's denial of his motion for new trial. Accordingly, as there is sufficient evidence in the record to support the trial court's ruling, such ruling is not clearly erroneous. *Milliken v. State*, supra at 813. These allegations are without merit.

5. Finally, Leon claims that the trial court erred in sentencing him on both the child molestation[4] and enticement[5] charges, asserting that, under the circumstances of this case, the two charges merge as a matter of fact. However, the trial court specifically and properly found that the evidence demonstrated that the criminal acts as described in the indictment were separate and distinct, so that they did not merge.

> Child molestation and enticement do not merge as a matter of law, since each has an element not necessary to prove the other (the actual commission of an immoral or

---

[4] Under OCGA § 16-6-4 (a), "[a] person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."

[5] Under OCGA § 16-6-5 (a), "[a] person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts."

indecent act for child molestation; asportation for entice-
ment). *Williams v. State*, 156 Ga. App. 481 (1) (274 SE2d
826) (1980); see also *Kirby v. State*, 187 Ga. App. 88 (2) (369
SE2d 274) (1988). *And they need not merge as a matter of
fact, since they generally occur sequentially* (i.e., the entice-
ment offense is completed before the child molestation
occurs), such that it is not necessary to prove one by using
the same or less than all the facts used to prove the other.
[Cits.]

(Emphasis supplied.) *Wells v. State*, 222 Ga. App. 587, 588 (3) (474
SE2d 764) (1996). See also *Wittschen v. State*, 259 Ga. 448, 449 (383
SE2d 885) (1989).

Such is the situation in this case. Here, the enticement count
alleged that Leon "did solicit [the victim] to a place, to wit: to his bed-
room, for the purpose of indecent act and child molestation, in that
said accused by telling her to go to his bedroom." This count was
proven by evidence that Leon ordered the victim to go to his bedroom
and slapped her when she refused, as well as with evidence that
Leon fondled the victim after she went into the bedroom. Therefore,
proof of the enticement count was accomplished at trial without reli-
ance on any additional evidence.

In contrast, the child molestation count charged Leon with "fon-
dling [the victim's] vagina and vaginal area, placing his penis into
contact with her vagina and vaginal area, causing her to touch his
penis, with intent to arouse and satisfy the sexual desires of said
accused[.]" All of these acts occurred during Leon's subsequent
attempt at intercourse with the child after he dragged her into the
bathroom and during his act in forcing the child to assist him in mas-
turbating.

Accordingly, merger was not required because the prosecution
did not have to prove the subsequent child molestation in the bath-
room in order to prove the enticement count. Cf. *Wells v. State*, supra.
There was no error.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED FEBRUARY 24, 1999 —
RECONSIDERATION DENIED MARCH 18, 1999 — 

*John A. Pickens*, for appellant.
*Kermit N. McManus, District Attorney, Stephen E. Spencer, Her-
bert M. Poston, Jr., Assistant District Attorneys*, for appellee.