**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 29, 2026

# In the Court of Appeals of Georgia

A26A0251. THE STATE v. BROWNLEE.

GOBEIL, Judge.

The trial court granted appellee Marquavius Brownlee's motion to suppress statements he made in an interview conducted by agents with the Georgia Bureau of Investigation ("GBI"). The State appeals, arguing that, in finding that Brownlee's statements were involuntary, the trial court misapplied the holding in *Garrity v. New Jersey*, 385 US 493 (87 SCt 616, 17 LE2d 562) (1967). For the reasons explained below, we reverse.

"In reviewing a trial court's determination regarding whether a statement is voluntary, we defer to the trial court's findings of fact unless clearly erroneous, but

we review de novo the trial court's application of the law to undisputed facts." *State v. Aiken*, 282 Ga. 132, 136(2) n. 21 (646 SE2d 222) (2007).

The record shows that in April 2022, the GBI began investigating Brownlee for allegations of child molestation. At the time, Brownlee was on administrative leave from his position as a deputy with the Cherokee County Sheriff's Office ("CCSO"). As part of their investigation, GBI Special Agents Kelly Aldrich and Dustin Hamby traveled to Brownlee's residence, where his wife and children were present, and they "asked if he would mind coming to the sheriff's office with [them] so that [they] could talk to him in a quiet place." Brownlee agreed to be interviewed at the CCSO. At this time, Brownlee was not under arrest, and he drove himself to the sheriff's office. The room where agents questioned Brownlee was an internal affairs office within the CCSO that was equipped with video recording equipment. A video recording of this interview was played at the hearing on the motion to suppress, but Brownlee did not testify at the hearing.

At the outset of the interview, Agent Hamby informed Brownlee: "At any time if you don't want to be here, or if you want to stop talking, that's totally up to you. You're not in custody. ... All you've got to do is say 'when' [to get out]." Aldrich

2

explained that she wanted to "make it very clear to Mr. Brownlee that he did not have to speak to" the agents. Specifically, Aldrich informed Brownlee: "You're not in custody, but you're an officer and I want you to understand that you do have rights." She then read Brownlee an "admonishment" to inform him that the agents were conducting a criminal investigation that had nothing to do with his job. The admonishment provides as follows:

> This investigation is to determine whether any criminal laws have been violated that resulted in this investigation. It is not an administrative or disciplinary inquiry. You are not being compelled to give any statement or answer any questions. Your cooperation in this investigation is voluntary.

After she read the admonishment, Aldrich asked Brownlee: "Do you want to talk us about what happened with [the victim]?" Brownlee responded: "Yes."

When Agent Hamby asked Brownlee what he thought would happen at the conclusion of the agents' investigation, Brownlee made a statement about going back to work to make money for his family and stated: "At the end of the day, I'm walking from this." He denied repeatedly any allegations of wrongdoing and volunteered to

take a polygraph. Agent Hamby advised him: "Don't take the polygraph if you can't pass it."

At the conclusion of the interview, Aldrich requested consent to search Brownlee's phone. She told him that he could either give her the phone, or she would obtain a search warrant, and he handed his phone over to the agents and signed a consent form for the search. He then got in his car and drove home. At no point during the interview did Brownlee ask for a lawyer or refuse to answer any questions. Aldrich was aware that Brownlee was on administrative leave from CCSO at the time she conducted the interview, but she had not spoken to Brownlee's superior officer. Agent Hamby was also aware that Brownlee was on administrative leave, but a CCSO internal affairs investigation had not yet commenced. Hamby testified that the agents did not promise anything to Brownlee in exchange for his speaking to them, nor did Hamby have any information about what would happen to Brownlee if he did not speak to the GBI agents. The agents did not read *Miranda*[1] warnings because Brownlee was not under arrest and the interview was voluntary.

---

[1] *Miranda v. Arizona*, 384 US 436 (84 SCt 1774, 12 LE2d 908) (1964).

Brownlee submitted to a polygraph with the GBI on May 2, 2022, and he informed his superior officer that "he thought it went well." The officer inquired with GBI about the polygraph results, and an agent informed him that the test showed signs of deception. Brownlee's employment with CCSO ultimately was terminated because, in violation of CCSO policy, he misrepresented the results of the polygraph exam to his superior officer after being informed by Aldrich that he had failed the test. The CCSO personnel handbook, which was admitted at the hearing, provides in relevant part:

> Employees are expected to cooperate with all legally authorized agencies and their representatives in the pursuit of their official duties. It is imperative that employees assist colleagues fully and completely with respect and consideration at all times.

The conduct code also directs employees to "truthfully answer all questions specifically directed and narrowly related to the agency's scope of employment and operations."

In December 2022, Brownlee was charged by indictment with two counts each of aggravated child molestation and child molestation, and one count each of enticing a child for indecent purposes and violation of oath by public officer. Brownlee filed a

motion to suppress, and the State requested a hearing. Following the hearing, at which Aldrich and Hamby were the only witnesses, the trial court granted Brownlee's motion, ruling that any statements made by him during the interview were coerced such that they could not be used against him in a criminal trial. Ultimately, the court found that, "by taking Brownlee, who they knew was on [a]dministrative [s]uspension to a dedicated and difficult to access interview room in the heart of Internal Affairs, the Special Agents set up a scenario that reinforced Brownlee's belief that his cooperation was essential to getting his job back." This appeal followed.

In its sole claim of error, the State argues that the trial court erred by suppressing Brownlee's statements. Given that the GBI agents did not threaten Brownlee's employment and that Brownlee did not testify at the hearing, the State reasons that there is no record evidence from which the trial court could determine that Brownlee feared adverse employment consequences if he did not cooperate with the criminal investigation.

In *Garrity*, 385 US at 500, the United States Supreme Court held that statements made by police officers under express threat of termination from employment constitute coerced confessions that cannot be used in a subsequent

6

criminal proceeding. Georgia courts employ a "totality-of-the-circumstances test ... for determining whether the statements that a public employee makes during an investigation into his activities are voluntary." *Aiken*, 282 Ga. at 135(2). Where, as here, there is no express threat of termination from employment,

> the court may examine whether the defendant subjectively believed that he could lose his job for failing to cooperate and whether, if so, that belief was reasonable given the state action involved. In determining whether the defendant's belief was objectively reasonable, the court may examine whether the defendant was aware of any statutes, ordinances, manuals, or policies that required cooperation and provided generally, without specifying a penalty, that an employee could be subject to discipline for failing to cooperate.

Id. at 135-36(2).

As noted above, Brownlee did not testify at the hearing. Therefore, the State contends that several of the trial court's findings are unsupported by any evidence. For example, the trial court found that Brownlee "knew of the cooperation requirement in the personnel policy." However, neither Brownlee nor any representative from the CCSO testified as to Brownlee's knowledge or understanding of the personnel handbook, and the copy of the handbook admitted at the hearing is

7

not signed by Brownlee. In addition, the trial court inferred that the location of the interview — in a room within the CCSO Internal Affairs Office — added to Brownlee's belief that he felt forced to cooperate, but the record is devoid of evidence to support this finding.

Here, the lack of evidence that Brownlee subjectively believed that his employment was in jeopardy if he failed to answer the GBI agents' questions, coupled with the admonishment informing him that the investigation was criminal in nature, had nothing to do with his job, and he did not have to speak with the agents, does not support the conclusion that Brownlee's statements were involuntary. Compare *Shields v. State*, 368 Ga. App. 586, 588-90(1) (890 SE2d 505) (2023) (holding that statements made by defendant, who was member of US Army, were voluntary, even though interview was conducted in commander's office and military protocol required defendant to remain in office until dismissed by commander; interview was conducted after commander and Army Criminal Investigation Division agent left room, defendant was informed he was free to leave at any time, and defendant presented no evidence of either an overt threat or subjective belief that failure to cooperate would result in employment termination); *Bell v. State*, 352 Ga. App. 802, 812-15(2)(c) (835

8

SE2d 697) (2019) (affirming trial court's finding that no *Garrity* violation occurred despite defendant's testimony that he feared he would face termination for failing to answer investigator's questions; defendant's subjective belief was unreasonable because he knew he was being asked to give a voluntary statement in a criminal investigation — rather than an internal affairs investigation, he knew he was not required to submit to a criminal investigation, and he knew that policy manual provided for termination only upon refusal to cooperate with internal investigation); *State v. Stinson*, 244 Ga. App. 622, 625 (536 SE2d 293) (2000) (reversing trial court's exclusion of statement under *Garrity* where defendant did not present evidence of either an overt threat to terminate his employment or that he subjectively believed he would be terminated if he failed to answer questions), with *Thompson v. State*, 288 Ga. 165, 168-69 (702 SE2d 198) (2010) (affirming trial court's grant of officer's motion to suppress where he testified that he was aware of police department manual which stated that the failure to answer questions in an internal affairs investigation could result in employment termination and he felt compelled to cooperate with investigations for fear of losing his job).

In light of the foregoing, we reverse the trial court's order granting Brownlee's motion to suppress.

*Judgment reversed. Dillard, P. J., and Pipkin, J., concur.*