S16G0280. EVANS v. THE STATE.
(794 SE2d 40)

HINES, Presiding Justice.
This Court granted certiorari to the Court of Appeals in *Evans v. State*, 334 Ga. App. 104 (778 SE2d 360) (2015), to determine whether that Court was correct in construing the phrase "relevant similar

transaction" used in OCGA § 17-10-6.2 (c) (1) (C), which governs sentencing of sexual offenders, to include sexual offenses charged in the same indictment as the crime for which sentence is imposed. Finding that the Court of Appeals was correct in so holding, we affirm the judgment of that Court.

Evans was indicted on one count of child molestation, alleged to have occurred between January 1, 2009 and August 31, 2009, and two counts of sexual exploitation of children, that were alleged to have occurred on or about January 21, 2010. After a bench trial, Evans was convicted of child molestation and of one of the counts of sexual exploitation of children, and acquitted of the other count. At sentencing, the trial court opined that the law provided that it could not sentence Evans to less than the mandatory minimum of five years to serve in prison for the child molestation conviction because the conviction for sexual exploitation of children was a "relevant similar transaction," which precluded a downward deviation under OCGA § 17-10-6.2 (c) (1) (C). The court then sentenced Evans to 20 years, with five years to be served in prison, on the child molestation charge, and a concurrent sentence of five years to be served in prison for the sexual exploitation conviction. The Court of Appeals affirmed, finding that the trial court had correctly applied OCGA § 17-10-6.2 (c) (1) (C). Further facts may be found in the opinion of the Court of Appeals. *Evans*, supra.

As noted, OCGA § 17-10-6.2 governs the sentencing of sexual offenders.[1]

> Under the statutory scheme set forth in OCGA § 17-10-6.2, a trial court is prohibited from probating, suspending, staying, deferring, or withholding any of the mandatory term of imprisonment stated for any of the specified offenses. OCGA § 17-10-6.2 (b). However, if certain factors are found, a sentencing court is given the discretion to deviate from the mandatory minimum prison sentence; all of the factors stated must be present to authorize a court to deviate from the mandatory minimum sentence, OCGA § 17-10-6.2 (c) (1) (A)-(F).[2]

---

[1] OCGA § 17-10-6.2 defines both child molestation and sexual exploitation of children as "sexual offenses." See OCGA § 17-10-6.2 (a) (5) and (10).

[2] OCGA § 17-10-6.2 (c) (1) reads:

> In the court's discretion, the court may deviate from the mandatory minimum sentence as set forth in subsection (b) of this Code section, or any portion thereof, when the prosecuting attorney and the defendant have agreed to a sentence that

*Hedden v. State*, 288 Ga. 871, 874 (708 SE2d 287) (2011). And, one of the factors that must be present to allow the trial court to exercise discretion to deviate from the mandatory minimum is that the trial court "has not found evidence of a relevant similar transaction." OCGA § 17-10-6.2 (c) (1) (C). As the Court of Appeals found, a "relevant similar transaction" under the statutory sentencing scheme can indeed be an offense contained in the same indictment when the trial court is sentencing the defendant for any specific count.

The term "relevant similar transaction" is not defined in OCGA § 17-10-6.2, but when that statute was enacted in 2006, "similar transaction" had a well established legal meaning, and referred to an act independent of the criminal charge at issue, but similar to it. See, e.g., *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). Generally, evidence that a defendant has committed a crime or bad act other than one for which he is being prosecuted is irrelevant to that prosecution, and not admissible against him during that trial. *Pareja v. State*, 286 Ga. 117, 119 (686 SE2d 232) (2009). This comports with the "fundamental principle that the general character of an accused is inadmissible unless the accused chooses to put his character in issue. [Cit.]" *Williams*, supra at 641 (2) (a). However, under Georgia's "old Evidence Code, evidence of an independent act could be offered [at trial] to prove such things as motive, intent, bent of mind, course of conduct [. . .], plan, scheme, or identity. [Cit.]"[3] *Peoples v. State*, 295 Ga. 44, 54 (4) (b) (757 SE2d 646)

---

is below such mandatory minimum or provided that:

(A) The defendant has no prior conviction of an offense prohibited by Chapter 6 of Title 16 or Part 2 of Article 3 of Chapter 12 of Title 16, nor a prior conviction for any offense under federal law or the laws of another state or territory of the United States which consists of the same or similar elements of offenses prohibited by Chapter 6 of Title 16 or Part 2 of Article 3 of Chapter 12 of Title 16;

(B) The defendant did not use a deadly weapon or any object, device, or instrument which when used offensively against a person would be likely to or actually did result in serious bodily injury during the commission of the offense;

(C) The court has not found evidence of a relevant similar transaction;

(D) The victim did not suffer any intentional physical harm during the commission of the offense;

(E) The offense did not involve the transportation of the victim; and

(F) The victim was not physically restrained during the commission of the offense.

[3] Under Georgia's new Evidence Code, effective for trials conducted after January 1, 2013, OCGA § 24-4-404 (b) governs admission of "[e]vidence of other crimes, wrongs, or acts" for certain specified purposes.

(2014). In *Williams*, supra, this Court established that

> before any evidence of independent offenses or acts may be admitted into evidence [at trial], a hearing must be held pursuant to Uniform Superior Court Rule 31.3 (B). At that hearing, the state must make three affirmative showings as to each independent offense or act it seeks to introduce. The first of these affirmative showings is that the state seeks to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility.

Id. (Footnote omitted.) And, former Uniform Superior Court Rule ("USCR") 31.3[4] not only set forth the procedures for how evidence of independent acts was placed before the jury, but provided a template for understanding how, and when, an independent act, extrinsic to

---

[4] Former USCR 31.3 read:

(A) The prosecution may, upon notice filed in accordance with section 31.1 of these rules, request of the court in which the accusation or indictment is pending leave to present during the trial of the pending case evidence of similar transactions or occurrences.

(B) The notice shall be in writing, served upon the defendant's counsel, and shall state the transaction, date, county, and the name(s) of the victim(s) for each similar transaction or occurrence sought to be introduced. Copies of accusations or indictments, if any, and guilty pleas or verdicts, if any, shall be attached to the notice. The judge shall hold a hearing at such time as may be appropriate, and may receive evidence on any issue of fact necessary to determine the request, out of the presence of the jury. The burden of proving that the evidence of similar transactions or occurrences should be admitted shall be upon the prosecution. The state may present during the trial evidence of only those similar transactions or occurrences specifically approved by the judge.

(C) Evidence of similar transactions or occurrences not approved shall be inadmissible. In every case, the prosecuting attorney and defense attorney shall instruct their witnesses not to refer to similar crimes, transactions or occurrences, or otherwise place the defendant's character in issue, unless specifically authorized by the judge.

(D) If upon the trial of the case the defense places the defendant's character in issue, evidence of similar transactions or occurrences, as shall be admissible according to the rules of evidence, shall be admissible, the above provisions notwithstanding.

(E) Nothing in this rule is intended to prohibit the state from introducing evidence of similar transactions or occurrences which are lesser included alleged offenses of the charge being tried, or are immediately related in time and place to the charge being tried, as part of a single, continuous transaction. Nothing in this rule is intended to alter the rules of evidence relating to impeachment of witnesses.

(F) This rule shall not apply to sentencing hearings.

By order of this Court, effective June 4, 2015, former USCR 31.3 was deleted in light of OCGA §§ 24-4-404 (b), 24-4-412–24-4-414, and 24-4-417. See 296 Georgia Reports Advance Sheets Vol. 3, No. 49 (June 4, 2015).

the criminal charge before the court, is relevant. Of course, multiple charges in an indictment or accusation are not independent acts extrinsic to that prosecution, but simply the charges at issue, evidence of which will necessarily be introduced as part of the State's case-in-chief. See *Algren v. State*, 330 Ga. App. 1, 6 (2) (764 SE2d 611) (2014). But, when the State sought to introduce evidence of acts outside the charges being prosecuted for a purpose recognized under Georgia's old Evidence Code, former USCR 31.3 (A) and (B) set forth the procedures for notice and a hearing in which the trial judge would determine whether the evidence would be admitted at trial. Former USCR 31.3 (C) provided what would be done regarding independent act evidence that the trial court did not permit to be introduced before the factfinder, and former USCR 31.3 (D) provided that, if the defense placed the defendant's character in issue, independent act evidence could be introduced, subject to the rules of evidence, without following the procedures set forth in former USCR 31.3 (A)-(C). Thus, former USCR 31.3 (A)-(D) addressed how evidence of independent acts extrinsic to the charge at issue might be admitted at trial for purposes recognized under Georgia's old Evidence Code; their purpose was to aid the trial court in preventing improper evidence that might prejudice the defendant from being placed before the factfinder. *Barrett v. State*, 263 Ga. 533, 535 (2) (436 SE2d 480) (1993), reversed on other grounds, *Wall v. State*, 269 Ga. 506, 508-509 (2) (500 SE2d 904) (1998). See also *Peoples*, supra.[5] And, former USCR 31.3 (F) recognized that admission of evidence of extrinsic acts before the factfinder was not an issue when the court, sitting alone, sentenced a defendant after a finding of guilt, and thus specified that the procedures of former USCR 31.3 for placing such evidence before the factfinder "shall not apply to sentencing hearings." Former USCR 31.3 (F).

This language in former USCR 31.3 (F) is simply a recognition that a trial court's role in sentencing is significantly different from its role in determining whether evidence of independent acts could be placed before the jury under the strictures of former USCR 31.3. Under OCGA § 17-10-2 (a) (1),[6] a sentencing hearing in a felony case

---

[5] Former USCR 31.3 (E) specified that evidence of acts that were lesser included offenses of charges set forth in the indictment or accusation, and of acts that were part of a continuous transaction that included a crime charged, would not be subject to the notice and hearing requirements of former USCR 31.3 (A) and (B).

[6] OCGA § 17-10-2 reads:

> (a) (1) Except in cases in which the death penalty may be imposed, upon the return of a verdict of "guilty" by the jury in any felony case, the judge shall dismiss the jury and shall conduct a presentence hearing at which the only issue shall be the determination of punishment to be

is to be had after the jury is dismissed, and "[i]n the hearing the judge shall hear additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or nolo contendere of the accused, or the absence of any prior conviction and pleas."[7] Id. When the court determines sentencing, there is no prohibition on its consideration of evidence presented during the trial. Rather, "[w]hen sentencing, a trial court may consider any evidence that was properly admitted during the guilt-innocence phase of the trial . . . ." *Blake v. State*, 273 Ga. 447, 450 (4) (542 SE2d 492) (2001) (Citations omitted.)[8] And, as to sentencing, each count stands alone; thus, when a trial court considers the appropriate sentence for Count 1 of an indictment, it is the only criminal charge at issue, and not any other counts in the indictment. It is in that light that the sentencing provision of OCGA §

---

imposed. In the hearing the judge shall hear additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or nolo contendere of the accused, or the absence of any prior conviction and pleas.

(2) The judge shall also hear argument by the accused or the accused's counsel and the prosecuting attorney, as provided by law, regarding the punishment to be imposed. Except in cases where the death penalty may be imposed, the prosecuting attorney shall open and conclude the argument. In cases where the death penalty may be imposed, the prosecuting attorney shall open and the accused or the accused's counsel shall conclude the argument.

(3) Upon the conclusion of the evidence and arguments, the judge shall impose the sentence or shall recess the trial for the purpose of taking the sentence to be imposed under advisement. The judge shall fix a sentence within the limits prescribed by law.

(b) In cases in which the death penalty may be imposed, the judge, when sitting without a jury, in addition to the procedure set forth in subsection (a) of this Code section, shall follow the procedures provided for in Code Section 17-10-30.

(c) In all cases tried by a jury in which the death penalty may be imposed, upon a return of a verdict of "guilty" by the jury, the court shall resume the trial and conduct a presentence hearing before the jury. The hearing shall be conducted in the same manner as presentence hearings conducted before the judge as provided for in subsection (a) of this Code section. Upon the conclusion of the evidence and arguments, the judge shall give the jury appropriate instructions, and the jury shall retire to determine whether any mitigating or aggravating circumstances, as defined in Code Section 17-10-30, exist and whether to recommend mercy for the accused. Upon the findings of the jury, the judge shall fix a sentence within the limits prescribed by law.

(d) If the trial court is reversed on appeal because of error only in the presentence hearing, the new trial which may be ordered shall apply only to the issue of punishment.

[7] The provisions of OCGA § 17-10-2 existed in substantially their current form at the time of the passage of OCGA § 17-10-6.2 in 2006. See Ga. L. 1993, p. 1654, § 2 and Ga. L. 2005, p. 20, § 11.

[8] As the Court of Appeals noted, this was clearly the state of the law when the General Assembly enacted OCGA § 17-10-6.2. *Evans*, supra at 106.

17-10-6.2 (c) (1) (C) must be read; when the trial court considers sentencing on any specific count, a similar act not included in that count is independent to it such that, even if it is charged in the same indictment, it can be a "relevant similar transaction" so as to preclude a downward modification of sentencing.[9]

Nonetheless, Evans urges this Court to consider "relevant similar transaction" to mean only an act evidence of which was placed before the factfinder through the procedures of former USCR 31.3 (A)-(D). Certainly, as he notes, after *Williams*, a significant number of reported appellate cases addressed the admission of "similar transaction" evidence under former USCR 31.3, and the use of such evidence at trial, prior to the General Assembly's passage of OCGA § 17-10-6.2. See, e.g., *Sedlak v. State*, 275 Ga. 746, 749-750 (2) (e) (571 SE2d 721) (2002); *Grier v. State*, 273 Ga. App. 517, 518-519 (2) (615 SE2d 586) (2005); *Smith v. State*, 265 Ga. App. 57, 59 (2) (592 SE2d 871) (2004). Indeed, as this Court has noted, it became "common to refer to cases using the *Williams* analysis as 'similar transaction' cases. [Cits.]" *Young v. State*, 281 Ga. 750, 752 (642 SE2d 806) (2007). However, this Court has also noted that any use of the term "similar transaction cases" to refer to cases addressing the *Williams* analysis and admission of evidence under former USCR 31.3 represented a misnomer, as, properly, "the concept is as stated in *Williams*; what is at issue is the admission [at trial] of evidence of 'independent offenses or acts.' [Cit.]" *Young*, supra. See also *Peoples*, supra at 53; *Barrett*, supra at 533 n. 2. Accordingly, any shorthand reference to "similar transaction cases" does not alter our analysis of the use of independent acts in either the evidentiary context, or the sentencing context.

We also note that this Court is to "look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). Here, in passing OCGA § 17-10-6.2, the General Assembly specified what it found to be the evil, and its chosen remedy, in the act that created OCGA § 17-10-6.2. Section 1 of the act (not codified), states:

> The General Assembly finds and declares that recidivist sexual offenders, sexual offenders who use physical violence, and sexual offenders who prey on children are sexual predators who present an extreme threat to the public safety. Many sexual offenders are extremely likely to use

---

[9] The Court of Appeals correctly noted, as both child molestation and sexual exploitation of children are defined as "sexual offenses," see OCGA § 17-10-6.2 (a) (5) and (10), they can be considered "relevant similar transactions" within the meaning of OCGA § 17-10-6.2 (c) (1) (C). *Evans*, supra at 106.

physical violence and to repeat their offenses; and some sexual offenders commit many offenses, have many more victims than are ever reported, and are prosecuted for only a fraction of their crimes. The General Assembly finds that this makes the cost of sexual offender victimization to society at large, while incalculable, clearly exorbitant. The General Assembly further finds that the high level of threat that a sexual predator presents to the public safety, and the long-term effects suffered by victims of sex offenses, provide the state with sufficient justification to implement a strategy that includes:

(1) Incarcerating sexual offenders and maintaining adequate facilities to ensure that decisions to release sexual predators into the community are not made on the basis of inadequate space;

. . .

The General Assembly further finds that the state has a compelling interest in protecting the public from sexual offenders and in protecting children from predatory sexual activity . . . .

Ga. L. 2006, pp. 379, 381, § 1.

The General Assembly thus clearly expressed its concern with those who commit multiple separate sexual offenses and chose, as part of its remedy of incarcerating such offenders, to prohibit any downward deviation from the mandatory minimum sentence when the defendant is one who commits multiple separate sexual offenses. OCGA § 17-10-6.2 (c) (1) (C) effectuates that intent, and the Court of Appeals opinion is in keeping with it. The commission of multiple separate sexual offenses may, or may not, be prosecuted as one action, but the presence of such "relevant similar transactions" prevents a downward modification of the sentence to be afforded such an offender, regardless of the specifics of the prosecution. As the Court of Appeals noted:

Had the trial court granted Evans's motion [to sever the child molestation count from the counts of sexual exploitation of children], there would be no question that the evidence underlying his sexual exploitation of children would be admissible as a similar transaction in the trial on the child molestation count. See OCGA § 24-4-414. Since severance of the similar sexual offenses was not required, it seems implausible that the legislature would allow a defendant

convicted of more than one sexual offense to be eligible for a downward deviation from the mandatory minimum sentence simply because the offenses were tried together, rather than severed from one another.

*Evans*, supra at 107-108. That result would certainly thwart the General Assembly's chosen remedy that those who commit multiple separate sexual offenses be incarcerated longer. Simply put, the General Assembly's chosen remedy requires that those who commit multiple separate sexual offenses receive mandatory minimum sentences, and it matters not whether those offenses are, or could be, presented in the same prosecution.

Still, Evans contends that his reading of OCGA § 17-10-6.2 (c) (1) (C) would not necessarily produce such an unintended result, noting in his brief that the General Assembly has elsewhere provided for "more lenient treatment for defendants whose charges are combined in a single indictment," namely in the recidivist sentencing statute, OCGA § 17-10-7, which specifies that "[f]or the purpose of this Code section, conviction of two or more crimes charged on separate counts of one indictment or accusation, or in two or more indictments or accusations consolidated for trial, shall be deemed to be only one conviction." OCGA § 17-10-7 (d).[10]

---

[10] OCGA § 17-10-7 reads:

(a) Except as otherwise provided in subsection (b) or (b.1) of this Code section, any person who, after having been convicted of a felony offense in this state or having been convicted under the laws of any other state or of the United States of a crime which if committed within this state would be a felony and sentenced to confinement in a penal institution, commits a felony punishable by confinement in a penal institution shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.

(b) (1) As used in this subsection, the term "serious violent felony" means a serious violent felony as defined in subsection (a) of Code Section 17-10-6.1.

(2) Except as provided in subsection (e) of Code Section 17-10-6.1, any person who has been convicted of a serious violent felony in this state or who has been convicted under the laws of any other state or of the United States of a crime which if committed in this state would be a serious violent felony and who after such first conviction subsequently commits and is convicted of a serious violent felony for which such person is not sentenced to death shall be sentenced to imprisonment for life without parole. Any such sentence of life without parole shall not be suspended, stayed, probated, deferred, or withheld, and any such person sentenced pursuant to this paragraph shall not be eligible for any form of pardon, parole, or early release administered by the State Board of Pardons and Paroles or for any earned time, early release, work release, leave, or any other sentence-reducing measures under programs administered by the Department of Corrections, the effect of which would be to reduce the sentence of life imprisonment without possibility of parole, except as may be authorized by any existing or future provisions of the Constitution.

And, Evans wants this Court to read a similar specification into OCGA § 17-10-6.2; i.e., that the term "relevant similar transaction" is not to include "two or more crimes charged on separate counts of one indictment or accusation, or in two or more indictments or accusations consolidated for trial." But, OCGA § 17-10-6.2 contains no such component. Rather, it is clear that in 2006, when the General Assembly enacted OCGA § 17-10-6.2, it knew how to create such a provision, and chose not to do so.[11] *Hayes v. State*, 298 Ga. 98, 104 (2) (b) (779 SE2d 609) (2015); *Fair v. State*, 284 Ga. 165, 168 (2) (b) (664 SE2d 227) (2008). And, of course, such a choice is consistent with the intent of the General Assembly, that a downward modification of sentencing not be available to those who have committed multiple separate sexual offenses.

In fact, the policy concern of the General Assembly that those who commit multiple separate sexual offenses be incarcerated longer indicates why that body would *not* explicitly state that separate counts in the same indictment are not within the definition of "similar transactions" for purposes of sentencing under OCGA § 17-10-6.2. A defendant can, for what is essentially one sequence of events in which crimes are committed in rapid succession be found guilty of multiple crimes; that defendant would not, however, be the repeat offender that the General Assembly has focused upon. For instance, the crimes of enticing a child for indecent purposes[12] and

---

(b.1) Subsections (a) and (c) of this Code section shall not apply to a second or any subsequent conviction for any violation of subsection (a), paragraph (1) of subsection (i), or subsection (j) of Code Section 16-13-30.

(c) Except as otherwise provided in subsection (b) or (b.1) of this Code section and subsection (b) of Code Section 42-9-45, any person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

(d) For the purpose of this Code section, conviction of two or more crimes charged on separate counts of one indictment or accusation, or in two or more indictments or accusations consolidated for trial, shall be deemed to be only one conviction.

(e) This Code section is supplemental to other provisions relating to recidivous offenders.

[11] OCGA § 17-10-7 was enacted in 1994, in essentially its current form. See Ga. L. 1994, p. 1959, § 12.

[12] The crime of enticing a child for indecent purposes is set forth in OCGA § 16-6-5, which reads:

(a) A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts.

(b) Except as provided in subsection (c) of this Code section, a person convicted of the offense of enticing a child for indecent purposes shall be punished by imprison-

child molestation[13] are both defined as "sexual offenses" under

---

ment for not less than ten nor more than 30 years. Any person convicted under this Code section of the offense of enticing a child for indecent purposes shall, in addition, be subject to the sentencing and punishment provisions of Code Section 17-10-6.2.

 (c) If the victim is at least 14 but less than 16 years of age and the person convicted of enticing a child for indecent purposes is 18 years of age or younger and is no more than four years older than the victim, such person shall be guilty of a misdemeanor and shall not be subject to the sentencing and punishment provisions of Code Section 17-10-6.2.

[13] The crime of child molestation is set forth in OCGA § 16-6-4, which reads:

 (a) A person commits the offense of child molestation when such person:

  (1) Does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person; or

  (2) By means of an electronic device, transmits images of a person engaging in, inducing, or otherwise participating in any immoral or indecent act to a child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person.

 (b) (1) Except as provided in paragraph (2) of this subsection, a person convicted of a first offense of child molestation shall be punished by imprisonment for not less than five nor more than 20 years and shall be subject to the sentencing and punishment provisions of Code Sections 17-10-6.2 and 17-10-7. Upon a defendant being incarcerated on a conviction for a first offense, the Department of Corrections shall provide counseling to such defendant. Except as provided in paragraph (2) of this subsection, upon a second or subsequent conviction of an offense of child molestation, the defendant shall be punished by imprisonment for not less than ten years nor more than 30 years or by imprisonment for life and shall be subject to the sentencing and punishment provisions of Code Sections 17-10-6.2 and 17-10-7; provided, however, that prior to trial, a defendant shall be given notice, in writing, that the state intends to seek a punishment of life imprisonment.

  (2) If the victim is at least 14 but less than 16 years of age and the person convicted of child molestation is 18 years of age or younger and is no more than four years older than the victim, such person shall be guilty of a misdemeanor and shall not be subject to the sentencing and punishment provisions of Code Section 17-10-6.2.

 (c) A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy.

 (d) (1) Except as provided in paragraph (2) of this subsection, a person convicted of the offense of aggravated child molestation shall be punished by imprisonment for life or by a split sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment, followed by probation for life, and shall be subject to the sentencing and punishment provisions of Code Sections 17-10-6.1 and 17-10-7.

  (2) A person convicted of the offense of aggravated child molestation when:

   (A) The victim is at least 13 but less than 16 years of age;

   (B) The person convicted of aggravated child molestation is 18 years of age or younger and is no more than four years older than the victim; and

   (C) The basis of the charge of aggravated child molestation involves an act of sodomy

shall be guilty of a misdemeanor and shall not be subject to the sentencing and punishment provisions of Code Section 17-10-6.1.

OCGA § 17-10-6.2 (a), but the two crimes can occur sequentially, such as when the defendant persuades a child to go to his bedroom, where the defendant touches the victim in an indecent manner; in such circumstances, the enticement offense is complete before the child molestation act occurs. See *Leon v. State*, 237 Ga. App. 99, 107 (5) (513 SE2d 227) (1999). And, the two crimes do not merge as a matter of law, as each crime has an element that is not necessary to prove the other crime. Id. In such a scenario, the defendant has engaged in one "transaction"[14] that has resulted in two guilty verdicts, pursued through the same prosecution, but he has not, by virtue of this one sequence of events, become the repeat offender addressed by OCGA § 17-10-6.2 (c) (1) (C). Conversely, a defendant such as the one in *Lengsfeld v. State*, 324 Ga. App. 775, 782-783 (2) (751 SE2d 566) (2013), who on multiple occasions interspersed by approximately two weeks, encourages a child to sneak out of the child's house, meet him at his car, and then drives to a secluded destination, where the defendant touches the victim in an indecent manner, *has* become the repeat offender with whom the General Assembly is concerned in OCGA § 17-10-6.2. But, like the crimes in the first scenario, those in the second scenario would almost certainly be pursued in one indictment. Yet, if this Court did read into OCGA § 17-10-6.2 a stipulation that the term "relevant similar transaction" cannot include "two or more crimes charged on separate counts of one indictment," it would clearly be contrary to the intent of the General Assembly. While the defendant who, in a single transaction, commits both the crime of enticing a child for indecent purposes and child molestation would be eligible for a downward modification of his sentence because the term "relevant similar transaction" was read not to include "two or more crimes charged on separate counts of one indictment," so too would be the defendant in the second scenario, who has clearly engaged in the repeat behavior that the General Assembly specifically focused upon in OCGA § 17-10-6.2.

---

(e) A person shall be subject to prosecution in this state pursuant to Code Section 17-2-1 for any conduct made unlawful by paragraph (2) of subsection (a) of this Code section which the person engages in while:

(1) Either within or outside of this state if, by such conduct, the person commits a violation of paragraph (2) of subsection (a) of this Code section which involves a child who resides in this state; or

(2) Within this state if, by such conduct, the person commits a violation of paragraph (2) of subsection (a) of this Code section which involves a child who resides within or outside this state.

[14] "Transaction" is defined as a "[c]ommunication involving two or more people that affects all those involved; personal interaction . . . ." American Heritage Dictionary of the English Language, pp. 1524, 1682, 1899 (Houghton Mifflin Co., 1992).

As the acts that Evans was convicted of committing were well separated in time and were not part of one sequence of events,[15] the trial court was correct to consider the act of sexual exploitation of a child to be a "relevant similar transaction" that precluded a downward modification of sentencing for the crime of child molestation.

*Judgment affirmed. Thompson, C. J., Benham, Hunstein, Nahmias, and Blackwell, JJ., and Judge Asha Jackson concur. Melton, J., not participating.*

DECIDED NOVEMBER 21, 2016.

*Bowers and Roch, Thomas J. Bowers III, Donald R. Roch II*, for appellant.

*Shannon G. Wallace, District Attorney, Cliff Head, Jay G. Wall, Assistant District Attorneys*, for appellee.

*Law Firm of Shein & Brandenburg, Elizabeth A. Brandenburg; Margaret E. Heinen; Brandon A. Bullard; Peters, Rubin & Sheffield, Robert G. Rubin*, amici curiae.

---

[15] The crime of child molestation was alleged to be based upon an act committed upon a named victim between January 1, 2009 and August 31, 2009; the crime of sexual exploitation of a child of which Evans was found guilty was alleged to have occurred on or about January 21, 2010, by possession of certain digital images.

