### S16A1043. YELVERTON v. STATE OF GEORGIA.
(794 SE2d 613)

BLACKWELL, Justice.

More than 25 years ago, Raymond Yelverton was convicted of child molestation and aggravated child molestation, see *Yelverton v. State*, 199 Ga. App. 41 (403 SE2d 816) (1991), and as a result, he is required to register as a sexual offender. See OCGA § 42-1-12. Pursuant to OCGA § 42-1-19 (a) (4), Yelverton filed a petition for release from the registration requirements. The court below denied his petition, noting that evidence of a similar transaction was admitted at his criminal trial, and concluding that the admission of that evidence rendered Yelverton ineligible for release. Yelverton appeals, asserting that the court below misconstrued the law concerning his eligibility for release.[1] We agree, and we reverse the judgment below and remand for further proceedings consistent with this opinion.

1. In 1990, Yelverton was tried by a Tift County jury for the molestation of his daughter. The molestation involved fondling and oral sex, and it occurred between August 1984 and July 1987, when his daughter was between the ages of nine and thirteen years. See *Yelverton*, 199 Ga. App. at 42. At trial, the State presented testimony about a contemporaneous sexual encounter between Yelverton and an adult woman, which the criminal court admitted as evidence of his "proclivity toward nonconsensual sexual conduct":

> [The woman] testified that she lived in [Yelverton's] household for over a year, while she was 19 to 20 years old, and that in 1985 he attempted to have sexual relations with her. [She]

---

[1] Yelverton filed an application for discretionary appeal, see OCGA § 5-6-35 (a) (5.2), and we granted his application. Besides his contention that the court below misconstrued the law concerning his eligibility, Yelverton also argues that the sexual offender registration requirements are unconstitutional as applied to him. Although we need not resolve the constitutional question to decide this appeal, we note that the constitutional question forms the basis for our exercise of appellate jurisdiction in this case. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1) (Supreme Court has appellate jurisdiction in "all cases in which the constitutionality of a law, ordinance, or constitutional provision has been drawn in question.").

> testified that one night . . . she awoke suddenly from sleep because [Yelverton], who had entered her room, was touching her vagina. She testified that [Yelverton] left when she told him no.

Id. at 42 (1). According to his petition for release, Yelverton testified at his criminal trial that the sexual encounter with the adult woman happened, but he denied that she was asleep at the time, and he said that the encounter was consensual.[2] The jury found Yelverton guilty of child molestation and aggravated child molestation of his daughter, but we do not know what, if anything, the jury thought about the sexual encounter with the adult woman. We have no reason to think that the jury made any finding about that encounter, and in the absence of such a finding, we cannot know whether the jury concluded that the encounter was consensual, concluded that it was not consensual, or disregarded it entirely.

For the molestation of his daughter, Yelverton was sentenced to imprisonment for 20 years, and he was released on parole in May 2002. Upon his release, he registered as a sexual offender,[3] and according to his petition for release, he subsequently was classified by the Sexual Offender Registration Review Board as a Level I offender, a classification that signifies that "the sexual offender is a low sex offense risk and low recidivism risk for future sexual offenses." OCGA § 42-1-12 (a) (12). See also *Gregory v. Sexual Offender Registration Review Board*, 298 Ga. 675, 680-682 (1) (784 SE2d 392) (2016). Yelverton completed his sentence in February 2010.

In March 2015, Yelverton filed his petition for release in the Superior Court of Tift County,[4] alleging that he is eligible for release

---

[2] The record of the criminal trial was not made a part of the record of the proceedings on the petition for release. For that reason, our only information about what happened at the criminal trial comes from the decision of the Court of Appeals in *Yelverton* and the petition itself. Because the facts alleged in the petition appear to be consistent with *Yelverton* and uncontroverted (at least at this point), we accept the truth of those allegations for the purposes of this appeal.

[3] The General Assembly first adopted the sexual offender registration requirements in 1996. See Ga. L. 1996, p. 1520. Those requirements apply, however, to "any individual who . . . [h]as previously been convicted of a criminal offense against a victim who is a minor and may be released from prison or placed on parole, supervised release, or probation on or after July 1, 1996." OCGA § 42-1-12 (e) (3). An offense that "consists of . . . [c]riminal sexual conduct toward a minor" is a "criminal offense against a victim who is a minor," OCGA § 42-1-12 (a) (9) (A), and child molestation and aggravated child molestation are "criminal offense[s] against a victim who is a minor." See *Spivey v. State*, 274 Ga. App. 834, 837 (2) (a) (619 SE2d 346) (2005). Yelverton is, therefore, subject to the registration requirements.

[4] A petition for release under OCGA § 42-1-19 must be filed "in the superior court of the jurisdiction in which the [petitioner] was convicted [of the crime that renders him subject to the registration requirements]," unless the petitioner was convicted in a jurisdiction outside Georgia. OCGA § 42-1-19 (b) (1).

under OCGA § 42-1-19 (a) (4). In pertinent part, that paragraph provides as follows:

> An individual required to register pursuant to Code Section 42-1-12 may petition a superior court for release from registration requirements . . . if the individual . . . [h]as completed all prison, parole, supervised release, and probation for the offense which required registration pursuant to Code Section 42-1-12 and meets the criteria set forth in subparagraphs (c)(1)(A) through (c)(1)(F) of Code Section 17-10-6.2.

OCGA § 42-1-19 (a) (4).[5] If the court in which the petition is filed finds that the petitioner satisfies these conditions and is, therefore, eligible for release, the court then must consider the likelihood that the petitioner will commit additional sexual offenses. If the court "finds by a preponderance of the evidence that the individual does not pose a substantial risk of perpetrating any future dangerous sexual offense,"[6]

---

[5] To be eligible for release under OCGA § 42-1-19 (a) (4), a petitioner also must show either that ten years have elapsed since his completion of his sentence, see OCGA § 42-1-19 (c) (2) (A), or that he has been classified by the Sexual Offender Registration Review Board as a Level I sexual offender. See OCGA § 42-1-19 (c) (2) (B). As we noted earlier, Yelverton alleged in his petition he has been classified as a Level I sexual offender.

[6] In this context, a "[d]angerous sexual offense" is

> any criminal offense, or the attempt to commit any criminal offense, under Title 16 as specified in this paragraph or any offense under federal law or the laws of another state or territory of the United States which consists of the same or similar elements of the following offenses:
>
> (i) Aggravated assault with the intent to rape in violation of Code Section 16-5-21;
>
> (ii) Kidnapping in violation of Code Section 16-5-40 which involves a victim who is less than 14 years of age, except by a parent;
>
> (iii) Trafficking a person for sexual servitude in violation of Code Section 16-5-46;
>
> (iv) Rape in violation of Code Section 16-6-1;
>
> (v) Sodomy in violation of Code Section 16-6-2;
>
> (vi) Aggravated sodomy in violation of Code Section 16-6-2;
>
> (vii) Statutory rape in violation of Code Section 16-6-3, if the individual convicted of the offense is 21 years of age or older;
>
> (viii) Child molestation in violation of Code Section 16-6-4;
>
> (ix) Aggravated child molestation in violation of Code Section 16-6-4, unless the person was convicted of a misdemeanor offense;
>
> (x) Enticing a child for indecent purposes in violation of Code Section 16-6-5;
>
> (xi) Sexual assault against persons in custody in violation of Code Section 16-6-5.1;
>
> (xii) Incest in violation of Code Section 16-6-22;
>
> (xiii) A second conviction for sexual battery in violation of Code Section 16-6-22.1;
>
> (xiv) Aggravated sexual battery in violation of Code Section 16-6-22.2;
>
> (xv) Sexual exploitation of children in violation of Code Section 16-12-100;

the court has discretion to release the petitioner from the registration requirements. OCGA § 42-1-19 (f). When presented with a petition for release, a court may consider "[a]ny evidence introduced by the petitioner," OCGA § 42-1-19 (d) (1), "[a]ny evidence introduced by the district attorney or sheriff," OCGA § 42-1-19 (d) (2), and "[a]ny other relevant evidence." OCGA § 42-1-19 (d) (3).

In this case, the court below determined that Yelverton was not eligible for release under OCGA § 42-1-19 (a) (4) because he did not meet all of the criteria set forth in OCGA § 17-10-6.2 (c) (1). Originally enacted in 2006,[7] OCGA § 17-10-6.2 concerns sentencing for certain sexual offenses.[8] Subsection (b) requires a sentencing court to impose a mandatory minimum sentence, but subsection (c) permits a sentencing court to deviate from the mandatory minimum sentence

---

(xvi) Electronically furnishing obscene material to minors in violation of Code Section 16-12-100.1;

(xvii) Computer pornography and child exploitation in violation of Code Section 16-12-100.2;

(xviii) Obscene telephone contact in violation of Code Section 16-12-100.3; or

(xix) Any conduct which, by its nature, is a sexual offense against a victim who is a minor or an attempt to commit a sexual offense against a victim who is a minor.

OCGA § 42-1-12 (a) (10) (B.1).

[7] See Ga. L. 2006, p. 379, § 21. The statute subsequently was amended in 2013. See Ga. L. 2013, p. 222, § 9.

[8] The sexual offenses to which OCGA § 17-10-6.2 applies are identified in subsection (a): As used in this Code section, the term "sexual offense" means:

(1) Aggravated assault with the intent to rape, as defined in Code Section 16-5-21;

(2) False imprisonment, as defined in Code Section 16-5-41, if the victim is not the child of the defendant and the victim is less than 14 years of age;

(3) Sodomy, as defined in Code Section 16-6-2, unless subject to the provisions of subsection (d) of Code Section 16-6-2;

(4) Statutory rape, as defined in Code Section 16-6-3, if the person convicted of the crime is 21 years of age or older;

(5) Child molestation, as defined in subsection (a) of Code Section 16-6-4, unless subject to the provisions of paragraph (2) of subsection (b) of Code Section 16-6-4;

(6) Enticing a child for indecent purposes, as defined in Code Section 16-6-5, unless subject to the provisions of subsection (c) of Code Section 16-6-5;

(7) Sexual assault against persons in custody, as defined in Code Section 16-6-5.1;

(8) Incest, as defined in Code Section 16-6-22;

(9) A second or subsequent conviction for sexual battery, as defined in Code Section 16-6-22.1; or

(10) Sexual exploitation of children, as defined in Code Section 16-12-100.

OCGA § 17-10-6.2 (a).

if the criteria set forth in subparagraphs (c) (1) (A) through (c) (1) (F) are satisfied. Those criteria are as follows:

> (A) The defendant has no prior conviction of an offense prohibited by Chapter 6 of Title 16 or Part 2 of Article 3 of Chapter 12 of Title 16, nor a prior conviction for any offense under federal law or the laws of another state or territory of the United States which consists of the same or similar elements of offenses prohibited by Chapter 6 of Title 16 or Part 2 of Article 3 of Chapter 12 of Title 16;
>
> (B) The defendant did not use a deadly weapon or any object, device, or instrument which when used offensively against a person would be likely to or actually did result in serious bodily injury during the commission of the offense;
>
> (C) The court has not found evidence of a relevant similar transaction;
>
> (D) The victim did not suffer any intentional physical harm during the commission of the offense;
>
> (E) The offense did not involve the transportation of the victim; and
>
> (F) The victim was not physically restrained during the commission of the offense.

OCGA § 17-10-6.2 (c) (1) (A)-(F). In 2010, the General Assembly incorporated these same criteria by reference into OCGA § 42-1-19, specifying that satisfaction of the criteria is a necessary condition of eligibility for release from the sexual offender registration requirements under OCGA § 42-1-19 (a) (4).[9]

The court below determined that Yelverton failed to meet the criterion set forth in OCGA § 17-10-6.2 (c) (1) (C), and for that reason, he is not eligible for release under OCGA § 42-1-19 (a) (4). That determination appears to have been based entirely on the fact that evidence of the sexual encounter with an adult woman was admitted against Yelverton as a "similar transaction" at his criminal trial. The court below explained:

> [Paragraph] (a) (4) specifically states a person seeking relief must meet the criteria set forth in OCGA § 17-10-6.2 (c) (1) (A)-(F). Because there was evidence of a similar transaction admitted at the trial of his case and deemed relevant by the original trial court, Petitioner does not meet

---

[9] See Ga. L. 2010, p. 168, § 15.

the criteria in OCGA § 17-10-6.2 (c) (1) and thus cannot be granted relief from registration.

Based on that determination, the court below denied the petition for release.[10]

Yelverton contends that the court below misconstrued OCGA § 17-10-6.2 (c) (1) (C), as that provision is incorporated by reference in OCGA § 42-1-19 (a) (4). In particular, Yelverton argues that a decision to admit evidence of an independent act against the accused in a criminal trial does not always and necessarily require a finding that there is "evidence of a relevant similar transaction" for the purposes of OCGA §§ 17-10-6.2 (c) (1) (C) and 42-1-19 (a) (4). For that reason, Yelverton says, a court considering a petition for release under OCGA § 42-1-19 (a) (4) must decide for itself whether the evidence presented against the petitioner in his criminal trial — or other evidence presented at the hearing on the petition for release — amounts to "evidence of a relevant similar transaction." About these things, Yelverton is correct.

Only a few days ago, this Court considered the meaning of OCGA § 17-10-6.2 (c) (1) (C) — albeit in the context of criminal sentencing, not a petition for release from sexual offender registration requirements — in *Evans v. State*, 300 Ga. 271 (794 SE2d 40) (2016). There, the defendant was tried and convicted of child molestation and the sexual exploitation of a child. When the trial court sentenced the defendant for the child molestation, the court concluded that it could not deviate from the mandatory minimum sentence because there was "evidence of a relevant similar transaction," namely, the sexual exploitation of a child of which the defendant also was convicted. We upheld the imposition of the mandatory minimum sentence, notwithstanding that the evidence of the sexual exploitation was admitted at trial not as a "similar transaction," but instead as evidence of a crime charged in the indictment. To begin, we explained that "[t]he term 'relevant similar transaction' is not defined in OCGA § 17-10-6.2, but when that statute was enacted in 2006, 'similar transaction' had a well established legal meaning, and referred

---

[10] This is Yelverton's second petition for release. He filed his first petition in July 2011. That petition was denied upon the same ground as the second petition. Yelverton attempted to appeal from the denial of his first petition, but his appeal was dismissed by the Court of Appeals because he failed to file an application for discretionary review. We note that OCGA § 42-1-19 (b) (3) contemplates the filing of successive petitions for release, and in any event, the State does not contend in this appeal that the denial of the first petition is res judicata or otherwise works an estoppel to bar the second petition.

to an act independent of the criminal charge at issue, but similar to it." Id. at 273 (citation omitted). Even so, we noted, "similar transaction" has differing usages in different contexts. In the context of criminal trials under our old Evidence Code, "similar transaction" commonly was used as shorthand to describe evidence of an act independent of the crimes charged in the indictment, which was offered and admitted for a particular purpose under the standard that this Court laid down in *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). See *Evans*, 300 Ga. at 277. But in the context of sentencing, we explained, "relevant similar transaction" — as that term is used in OCGA § 17-10-6.2 (c) (1) (C) with reference to the mandatory minimum sentence for a sexual offense — is most naturally and reasonably understood to mean an independent but similar sexual offense that shows the defendant to be a repeat sexual offender, whether or not that independent offense is charged in the same indictment, charged in a separate indictment, or uncharged. See id. In reaching that conclusion, we drew heavily upon the context of OCGA § 17-10-6.2 (c) (1) (C), which suggests that the General Assembly meant by that provision to "prohibit any downward deviation from the mandatory minimum sentence when the defendant is one who commits multiple separate sexual offenses." Id. Our reasoning in *Evans* is instructive here.

Just as the statutory context of OCGA § 17-10-6.2 (c) (1) (C) suggests that the provision is most naturally and reasonably understood to prohibit deviations from the mandatory minimum sentence for repeat sexual offenders, the context of its incorporation by reference into OCGA § 42-1-19 (a) (4) suggests that it is likewise most naturally and reasonably understood to render a sexual offender ineligible for release from the registration requirements if he has committed independent but similar sexual offenses that show him to be a repeat offender.[11] Indeed, even when a sexual offender is not categorically ineligible for release under OCGA § 42-1-19 (a) (4), a superior court properly may release the offender from the registration requirements only upon a finding "by a preponderance of the evidence that the individual does not pose a substantial risk of perpetrating any future dangerous sexual offense." OCGA § 42-1-19 (f). Moreover, the likelihood of a sexual offender committing additional sexual offenses is the basis of the three-tiered classification that is integral to the sexual offender registration scheme as a whole.

---

[11] If a sexual offender has a prior *conviction* for a sexual offense, he is rendered ineligible for release from the registration requirements by the incorporation of OCGA § 17-10-6.2 (c) (1) (A) into OCGA § 42-1-19 (a) (4). The incorporation of OCGA § 17-10-6.2 (c) (1) (C) deals with independent sexual offenses for which the sexual offender has not previously been convicted.

See, e.g., OCGA §§ 42-1-12 (a) (12), (a) (13), (a) (21) (B); 42-1-14 (a). As it is used in OCGA § 17-10-6.2 (c) (1) (C), "evidence of a relevant similar transaction" has the same meaning in both the sentencing and sexual offender registration contexts.

Accordingly, as it is used in OCGA § 17-10-6.2 (c) (1) (C) and incorporated by reference in OCGA § 42-1-19 (a) (4), "evidence of a relevant similar transaction" does not simply mean evidence of an independent act that is admitted pursuant to the *Williams* standard (under the old Evidence Code) — or OCGA § 24-4-404 (b) (under the new Evidence Code) — in a case in which the defendant is charged with a sexual offense. Indeed, not all "similar transaction" evidence admitted pursuant to the *Williams* standard is, in fact, evidence of an independent sexual offense, inasmuch as "similar transaction evidence was not limited to a defendant's previous illegal conduct." *State v. Ashley*, 299 Ga. 450, 455 (2) (a) (788 SE2d 796) (2016) (citations omitted). See also *Alatise v. State*, 291 Ga. 428, 431 (4) (728 SE2d 592) (2012). Here, of course, the evidence offered by the State against Yelverton at his 1990 molestation trial about the encounter with an adult woman potentially demonstrates an independent and similar sexual offense, inasmuch as the woman testified that Yelverton touched her sexually and without her consent. See OCGA § 16-6-22.1. Nevertheless, Yelverton claimed that the encounter was consensual, and we do not know how the jury assessed that evidence, if at all. Nor do we know what the criminal trial court thought of the evidence. To admit it as a "similar transaction" at the 1990 molestation trial, the criminal trial court did not have to find that Yelverton actually touched the woman without her consent. Rather, the criminal trial court only had to find that the State had made a prima facie showing, such that the jury could find by a preponderance of the evidence that Yelverton had done so (even if the judge did not believe the witness). See *Freeman v. State*, 268 Ga. 185, 187-188 (4) (486 SE2d 348) (1997) (adopting standard of proof for admissibility of other acts evidence established under Federal Rule of Evidence 404 (b) by *Huddleston v. United States*, 485 U. S. 681, 685 (108 SCt 1496, 99 LE2d 771) (1988)). For that reason, neither the verdict nor the evidentiary ruling in the 1990 molestation trial can be interpreted as a definitive determination that Yelverton touched the woman without her consent and thereby committed a sexual offense. Accordingly, neither the verdict nor the evidentiary ruling conclusively establishes that the encounter with the woman is a "relevant similar transaction" for the purposes of OCGA §§ 17-10-6.2 (c) (1) (C) and 42-1-19 (a) (4).

In these circumstances, it was for the court below — the court hearing the petition for release — to determine for itself whether there is "evidence of a relevant similar transaction" that would

render Yelverton ineligible for release. The court below erred when it failed to make such a determination, and so, we must reverse its judgment. We remand the case to the court below for further proceedings consistent with this opinion.

2. In light of our determination that the court below misconstrued the applicable statutory law and that its judgment must be reversed, we need not reach the constitutional issue raised by Yelverton. See note 1 supra.

*Judgment reversed and case remanded. All the Justices concur, except Thompson, C. J., and Melton, J., who dissent.*

MELTON, Justice, dissenting.

Because the majority's interpretation of OCGA § 17-10-6.2 (c) (1) (C) runs contrary to the plain meaning of the statute as expressed by the legislature, I must respectfully dissent from the majority's erroneous conclusion that the removal court erred by concluding that it could not remove Yelverton from the sexual offender registry due to the existence of evidence of a relevant similar transaction that had been properly admitted into evidence at Yelverton's 1990 child molestation trial.

As noted by the majority, after completing his 20-year sentence for child molestation and aggravated child molestation, on July 15, 2011, Yelverton filed a petition for removal from the sexual offender registry under OCGA § 42-1-19 (a) (4), which allows removal *only* if the offender

> [h]as completed all prison, parole, supervised release, and probation for the offense which required registration . . . and meets the criteria set forth in subparagraphs (c) (1) (A) through (c) (1) (F) of Code Section 17-10-6.2.

If the offender meets *all* of the criteria set forth in subparagraphs (c) (1) (A) through (c) (1) (F) of OCGA § 17-10-6.2,

> [t]he [removal] court may issue an order releasing the individual from registration requirements or residency or employment restrictions, in whole or part, if the court finds by a preponderance of the evidence that the individual does not pose a substantial risk of perpetrating any future dangerous sexual offense.

OCGA § 42-1-19 (f).

On March 5, 2012, the removal court properly denied the petition for removal, finding that, because "evidence of a relevant similar transaction" had been properly introduced at Yelverton's original

1990 trial,[12] the court could not "now second guess the admissibility or relevance" of that similar transaction for purposes of releasing Yelverton from the registration requirements. See OCGA § 17-10-6.2 (c) (1) (C) (sexual offender can only be removed from sexual offender registry where "[t]he [removal] court has not found evidence of a relevant similar transaction").

Over two years later, on March 9, 2015, Yelverton filed a second petition for removal from the sexual offender registry.[13] However, on June 12, 2015, the removal court also denied this petition, explaining:

> It is not necessary . . . for this Court to consider whether [Yelverton] meets the additional requirements of [OCGA §] 42-1-19 (c) (2) or whether he poses a substantial risk of perpetrating any future dangerous sexual offense, because he does not meet the initial criteria for relief under [OCGA §] 42-1-19 (a) (4) due to the similar transaction evidence admitted in the trial of his case. . . . Because there was evidence of a similar transaction admitted at the trial of his case and deemed relevant by the original trial court, [Yelverton] does not meet the criteria in OCGA § 17-10-6.2 (c) (1) and thus cannot be granted relief from registration.

Additionally, the removal court rejected Yelverton's constitutional argument that, as applied to him, the interplay of OCGA §§ 42-1-19 (a) (4) and 17-10-6.2 (c) (1) resulted in the imposition of ex post facto punishment.

The removal court was correct on both issues. With regard to its inability to remove Yelverton from the sexual offender registry, because OCGA § 42-1-19 (a) (4) requires that all of the criteria of OCGA § 17-10-6.2 (c) (1) (A) through (c) (1) (F) be met before a sexual offender may be considered for removal from the registration requirements, and because "evidence of a relevant similar transaction" existed from Yelverton's 1990 trial, the removal court properly concluded that Yelverton did not qualify for removal from the sexual offender registry as a matter of law.

Again, OCGA § 17-10-6.2 (c) (1) (C) provides that a sexual offender may only be considered for removal from the registration requirements where "[t]he court has not found evidence of a relevant similar

---

[12] Indeed, the Court of Appeals upheld the admissibility of the similar transaction introduced at Yelverton's 1990 trial. *Yelverton v. State*, 199 Ga. App. 41, 42 (1) (403 SE2d 816) (1991).

[13] OCGA § 42-1-19 (b) (3) says, "If a petition for release [from the sexual offender registry] is denied, another petition for release shall not be filed within a period of two years from the date of the final order on a previous petition."

transaction." Id. In determining whether the removal court's interpretation of this statute was correct, "we apply the fundamental rules of statutory construction that require us to construe [the] statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Citations omitted.) *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003). In this regard, "we must presume that the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted). We must also seek to effectuate the intent of the legislature. OCGA § 1-3-1 (a). In doing so, we must keep in mind that, while "[t]he common and customary usages of the words [in a statute] are important . . . so is their context." (Citations omitted.) *Chan v. Ellis*, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015). To find such context, a court "construing language in any one part of a statute . . . should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole." *Sikes v. State*, 268 Ga. 19, 21 (2) (485 SE2d 206) (1997).

Bearing these principles in mind, a straightforward reading of OCGA § 17-10-6.2 (c) (1) (C) reveals that, where the removal court finds in the record in the defendant's particular case that evidence of a relevant similar transaction already exists from the defendant's original trial, that defendant may not be considered for removal from the registration requirements. OCGA § 17-10-6.2 (c) (1) (C) only allows a sexual offender to be considered for removal from the registration requirements where "[t]he [removal] court has *not* found evidence of a relevant similar transaction." (Emphasis supplied.) Where, as here, a relevant and admissible similar transaction had already been admitted into evidence in Yelverton's 1990 trial, the removal court could not ignore the existence of this similar transaction and claim that the removal court itself "has not found evidence of a relevant similar transaction" simply because it was not the court that determined the initial relevance and admissibility of the similar transaction in the defendant's case. Because "evidence" of a relevant similar transaction existed in the record from Yelverton's trial, once the removal court found that it existed, the removal court was prohibited from further considering Yelverton's removal from the sexual offender registry.[14] Id.

---

[14] This is not to say that, in a situation where a similar transaction was not used at a defendant's trial, a removal court could not also find to be relevant evidence of a similar transaction that arose *after* the defendant's trial and before that defendant petitioned for removal from the sexual offender registry.

Indeed, at the time of Yelverton's trial in 1990, for similar transaction evidence to be admissible, the State had to make two showings:

> First, there [had to] be evidence that the defendant was in fact the perpetrator of the independent crime. Second, there [had to be] sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tend[ed] to prove the latter. *Bacon v. State*, 209 Ga. 261 (71 SE2d 615) (1952); *Howard v. State*, 211 Ga. 186 (84 SE2d 455) (1954).[15]

*French v. State*, 237 Ga. 620, 621 (3) (229 SE2d 410) (1976).

The State made these showings to the trial court with respect to a separate *sexual offense* committed by Yelverton, and the admission into evidence of this separate offense as a similar transaction at trial was upheld on appeal. *Yelverton*, supra, 199 Ga. App. at 43 (1). Therefore, there can be no dispute that "evidence" of a relevant similar transaction existed in connection with the child molestation case against Yelverton in 1990 that led to his conviction and his need to register as a sexual offender. The legislature has made no distinction in the plain text of OCGA § 17-10-6.2 (c) (1) (C) between "relevant similar transaction[s]" admitted at trial under the standards that existed at the time of Yelverton's trial and the standards that existed thereafter. See *Williams*, supra. See also OCGA §§ 24-4-414 and 24-4-404 (b). Instead, the statute focuses on the mere existence of

---

[15] We note that Yelverton's trial took place before this Court's decision in *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991), which clarified that, under our old Evidence Code, the admissibility of similar transaction evidence was governed by former Uniform Superior Court Rule 31.3 (B), and that the State had to make three affirmative showings before similar transaction evidence was admissible. Specifically,

> before any evidence of independent offenses or acts [could] be admitted into evidence, a hearing [had to be] held pursuant to Uniform Superior Court Rule 31.3 (B). At that hearing, the state [had to] make three affirmative showings as to each independent offense or act it [sought] to introduce. The first of these affirmative showings [was] that the state [sought] to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which ha[d] been deemed to be an exception to the general rule of inadmissibility. The second affirmative showing [was] that there [was] sufficient evidence to establish that the accused committed the independent offense or act. The third [was] that there [was] a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tend[ed] to prove the latter.

Id. at 642 (2) (b). Uniform Superior Court Rule 31.3 (B) was later deleted after the enactment of Georgia's new Evidence Code, which took effect on January 1, 2013. The admissibility of similar transaction evidence in child molestation cases is now governed by OCGA § 24-4-414. See also OCGA § 24-4-404 (b).

"evidence" of a relevant similar transaction under the specific circumstances of a particular defendant's case. See OCGA § 17-10-6.2 (c) (1) (C). Once such a relevant similar transaction has been found, a removal court cannot ignore its existence to allow for the defendant to become eligible for removal from the sexual offender registry. Id.

Yelverton and the majority argue that OCGA § 17-10-6.2 (c) (1) (C) should be interpreted to find that the legislature intended for the court reviewing a petition for removal to make an independent determination about whether a previously admitted similar transaction is still "relevant" to the case of the convicted sexual offender at the time that the offender has petitioned for removal. However, as shown above, this interpretation misconstrues the plain language of OCGA § 17-10-6.2 (c) (1) (C) indicating that a petitioner can only be considered for removal from the registration requirements where evidence of a relevant similar transaction does not already exist at the time that the defendant petitions for removal. Id. Also, as explained more fully below, when read in its proper context, OCGA § 17-10-6.2 (c) (1) (C) does not reveal a legislative intent for the court reviewing a petition for removal to make a *present* and independent determination about similar transactions from the past that have already been determined to be relevant to a sexual offender's case. Instead, the legislature has revealed an intent for the reviewing court to accept the circumstances as they existed at the time of the sexual offender's conviction when considering its determination as to whether the sexual offender may be appropriately removed from the sexual offender registry.

In this connection, the language of OCGA § 17-10-6.2 (c) (1) (C) must be read in conjunction with the provisions of OCGA § 17-10-6.2 (c) (1) as a whole to find the proper legislative context for that particular subparagraph. See *Sikes*, supra. This is especially true where, as here, a sexual offender cannot be considered for removal from the registry requirements if any of "the criteria set forth in subparagraphs (c) (1) (A) through (c) (1) (F) of [OCGA §] 17-10-6.2" — including the requirement that the court has not found evidence of a relevant similar transaction under subparagraph (c) (1) (C) — have not been met. OCGA § 42-1-19 (a) (4). The remaining criteria that must be met under OCGA § 17-10-6.2 (c) (1) include:

> (A) The defendant has *no prior conviction* of an offense prohibited by Chapter 6 of Title 16 [i.e., "Sexual Offenses"] or Part 2 of Article 3 of Chapter 12 of Title 16 [i.e., "Obscenity and Related Offenses" pertaining to minors], nor a prior conviction for any offense under federal law or the laws of another state or territory of the United States which consists

of the same or similar elements of offenses prohibited by Chapter 6 of Title 16 or Part 2 of Article 3 of Chapter 12 of Title 16;

(B) The defendant *did not use a deadly weapon* or any object, device, or instrument which when used offensively against a person would be likely to or actually did result in serious bodily injury during the commission of the offense;

. . .

(D) The victim did not suffer any intentional physical harm *during the commission of the offense*;

(E) *The offense* did not involve the transportation of the victim; and

(F) The victim was not physically restrained *during the commission of the offense*.

(Emphasis supplied.) Id.

Notably, *every single factor* to be considered for determining whether a sexual offender may be removed from the registration requirements looks *backward in time* to the state of affairs that existed at the time that the offender engaged in the activities that gave rise to his or her conviction. If the offender has prior convictions for sexual offenses; used a deadly weapon during the crime that gave rise to his or her need to register as a sexual offender; physically harmed the victim during the crime in question; transported the victim during the crime; or physically restrained the victim during the crime; the offender cannot be removed from the sexual offender registry. See OCGA §§ 42-1-19 (a) (4) and 17-10-6.2 (c) (1). The court reviewing a petition for removal makes no independent determination about these factors that already existed at the time of the offense that led to the perpetrator's need to register. If any of the factors were present at the time of the conviction that led to the petitioner's registration, the petitioner cannot be removed from the registration requirements. Id.

As is the case with all of the other factors outlined in OCGA § 17-10-6.2 (c) (1), when the record before the removal court reveals the existence of evidence of a relevant similar transaction from the defendant's trial, the existence of that similar transaction bars a petitioner from being removed from the sexual offender registry. This shows a consistent legislative intent in OCGA § 17-10-6.2 to ensure that those who have engaged in certain violent or other statutorily prohibited conduct in the past cannot take advantage of the opportunity to be removed from the sexual offender registration requirements. Specifically, in the case of OCGA § 17-10-6.2 (c) (1) (C), if

"evidence" exists to show that a petitioner has engaged in independent conduct in the past that was admissible as a relevant similar transaction in that sexual offender's trial, that defendant is not eligible to be removed from the sexual offender registry. Such a scheme falls directly in line with the legislature's goal of reducing the likelihood that individuals who "pose a substantial risk of perpetrating any future dangerous sexual offense" will be released from the sexual offender registration requirements. OCGA § 42-1-19 (f).

I therefore believe that the trial court properly interpreted OCGA §§ 42-1-19 (a) (4) and 17-10-6.2 (c) (1) (C), and would find no error in the trial court's denial of Yelverton's petition for removal from the sexual offender registration requirements.

Because I disagree with the majority's conclusion that the trial court erred in its interpretation of OCGA §§ 42-1-19 (a) (4) and 17-10-6.2 (c) (1) (C), I also disagree with its failure to reach the constitutional issue addressed by the removal court regarding alleged ex post facto punishment being imposed by the denial of Yelverton's petition for removal from the sexual offender registry. With regard to this constitutional issue, I would conclude that OCGA § 42-1-19 simply is not an ex post facto law:

> [A]n ex post facto law punishes conduct which was innocent when done; alters the quality or degree of, or inflicts a greater punishment for, a crime committed previously; requires less or different evidence than was required before the crime was committed; or deprives the offender of any substantial right possessed at the time the offender committed the act.

(Citations omitted.) *Thompson v. State*, 278 Ga. 394, 395 (603 SE2d 233) (2004). OCGA § 42-1-19 does not impose any sort of criminal punishment or deprive Yelverton of any substantial right that he possessed at the time that he committed his offenses. Rather, the statute provides a means for certain qualified individuals to be removed from the sexual offender registry — a registry which, itself, does not impose any punishment through an ex post facto law. See *Smith v. Doe*, 538 U. S. 84, 92 (II) (A) (123 SCt 1140, 155 LE2d 164) (2003) (statutory requirement for retroactive registration of sexual offenders was nonpunitive and did not itself constitute an ex post facto law). The fact that Yelverton has to remain on the sexual offender registry in light of his failed petition does nothing to change the circumstances that existed prior to the filing of his petition. He was not being punished through an ex post facto law from having to register as a sexual offender prior to filing his petition, nor is he being

punished now through the law that would have allowed him to be removed from the sexual offender registry had he been qualified for such removal.

For all of the aforementioned reasons, I respectfully dissent from the majority.

I am authorized to state that Chief Justice Thompson joins in this dissent.

DECIDED NOVEMBER 30, 2016.

*Gerald B. Williams*, for appellant.

*C. Paul Bowden, District Attorney, Jennifer D. Hart, Assistant District Attorney*, for appellee.